**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCKY EGG LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>Defendants. | Case No. 26-cv-03985 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED DISCOVERY, AND GRANTING PERMISSION TO EFFECTUATE SERVICE OF PROCESS BY E-MAIL AND ELECTRONIC PUBLICATION**

# TABLE OF CONTENTS

Pages

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. RELEVANT FACTS .......... 3

A. Plaintiff's Intellectual Property Protects Its Successful LUCKY EGG Brand .......... 3

B. Defendants Are Counterfeiters of LUCKY EGG Products .......... 5

1. Defendants Operate Legitimate-Looking Internet Stores .......... 8

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines .......... 8

3. Defendants Conceal Their Identities .......... 8

4. Defendants Evade Enforcement .......... 9

III. ARGUMENT .......... 10

A. This Court May Exercise Personal Jurisdiction Over Defendants .......... 12

B. Standard for a Temporary Restraining Order and Preliminary Injunction .......... 14

C. Plaintiff Will Likely Succeed on the Merits .......... 14

1. Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim. .......... 14

2. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim. .......... 16

3. Plaintiff Will Likely Succeed on Its Copyright Infringement Claim. .......... 17

4. Plaintiff Is Likely to Succeed on Its New York Unfair Competition Claim. .......... 19

D. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief .......... 20

E. The Balancing of Equities Tips in Plaintiff's Favor .......... 23

F. Issuance of the Injunction Is in the Public Interest. .......... 24

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE. .......... 25

A. Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate. .......... 26

B. Preventing the Fraudulent Transfer of Assets Is Appropriate. .......... 26

C. Plaintiff Is Entitled to Expedited Discovery .......... 29

D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case .......... 30

1. Defendants' Addresses for Service Are Not Known .......... 31

2. Defendants' Infringements of Plaintiff's Intellectual Property Create Exigent Circumstance for Service .......... 35

V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF .......... 36

VI. CONCLUSION .......... 37



ii

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*3M Co. v. Performance Supply, LLC*,
458 F. Supp. 3d 181 (S.D.N.Y. 2020) ....................14, 21, 23

*ABC v. DEF,*
No. 24-cv-8341 (DLC), 2024 WL 5168624 (S.D.N.Y. Dec. 13, 2024) ....................35

*adMarketplace, Inc. v. TeeSupport, Inc.,*
No. 13-cv-5635 (LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) ....................29

*Allstar Marketing Group, LLC v. 53 Romantic House Store*,
No. 20-cv-9072 (PAE), 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020) ....................2, 12

*Allstar Marketing Group, LLC v. BackforthTradeltd,*
No. 20-cv-9073 (PAE), 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020) ....................2, 12

*American Greetings Corp. v. Kleinfab Corp.*,
400 F. Supp. 228 (S.D.N.Y. 1975) ....................23

*American. Girl, LLC v. Zembrka*,
118 F.4th 271 (2d Cir. 2024) ....................13

*Animale Group, Inc. v. Sunny's Perfume Inc.*,
256 F. App'x 707 (5th Cir. 2007) ....................27, 28

*Balenciaga America, Inc. v. Dollinger*,
No. 10-cv-2912 (LTS), 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010) ....................28

*BBK Tobacco & Foods, LLP v. Galaxy VI Corp.,*
408 F. Supp. 3d 508 (S.D.N.Y. 2019) ....................15

*Bulgari S.p.A. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A,"*
No 14-cv-4819, 2014 WL 3749132 (N.D. Ill. July 18, 2014) ....................23

*Burger King Corp. v. Majeed*,
805 F. Supp. 994 (S.D. Fla. 1992) ....................23

*Cengage Learning, Inc. v. Doe 1*,
No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) .................... passim

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ....................13

*CJ Products LLC v. Concord Toys International, Inc.*,
No. 10–cv–5712 (ENV)(JO), 2011 WL 178610 (E.D.N.Y. Jan. 19, 2011) ....................25

*CJ Products. LLC v. Snuggly Plushez LLC*,
809 F. Supp. 2d 127 (E.D.N.Y. 2011) ....................22, 24

*CSC Holdings, Inc. v. Redisi*,
309 F.3d 988 (7th Cir. 2002) ....................28

*El Greco Leather Products Co. v. Shoe World, Inc.*,
806 F.2d 392 (2d Cir. 1986) ....................20

*EnviroCare Technologies., LLC v. Simanovsky*,
No. 11–cv–3458 (JS)(ETB), 2012 WL 2001443 (E.D.N.Y. June 4, 2012)....................13

*Estee Lauder, Inc. v. Watsky*,
323 F. Supp. 1064 (S.D.N.Y. 1970) ....................23

*Feist Publications, Inc. v. Rural Telephone Service Co.,*
499 U.S. 340 (1991)....................17

*Fendi Adele S.R.L. v. Filene's Basement, Inc*.,
696 F. Supp. 2d 368 (S.D.N.Y. 2010) ....................15

*Google LLC v. Doe 1,*
No. 25-cv-10440 (JSR), 2026 WL 353660 (S.D.N.Y. Feb. 9, 2026) ....................30, 31, 34

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, *Inc.*
527 U.S. 308 (1999)....................28

*Gucci America, Inc. v. Weixing Li,*
No. 10-cv-4974 (RJS), 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011) ....................28

*Guthrie Healthcare System v. ContextMedia, Inc.,*
826 F.3d 27 (2d Cir. 2016) ....................15

*Hermes International v. Lederer de Paris Fifth Ave., Inc.,*
219 F.3d 104 (2d Cir. 2000) ....................25

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ....................36

*Hudson Furniture, Inc. v. Mizrahi*,
No. 20-cv-4891 (PAC), 2020 WL 5202118 (S.D.N.Y. Sep. 1, 2020)....................21

*Ideal Industries, Inc. v. Gardener Bender, Inc.*,
612 F.2d 1018 (7th Cir. 1979) ....................22

*In re Vuitton et Fils S.A.*,
606 F.2d 1 (2d Cir. 1979) ....................2

*Intersell Ventures, LLC v. 1688 Factory Direct Store Store*,
No. 25-cv-408, 2025 WL 485715 (S.D.N.Y. Feb. 11, 2025) ....................35

*ISC-Bunker Ramo Corp. v. Altech, Inc.*,
765 F. Supp. 1310 (N.D. Ill. 1990) ....................24, 25

*Jefferson v. Johnson Publishing, Inc.*,
No. 92-cv-7011, 1992 WL 318615 (N.D. Ill. Oct. 28, 1992) ....................22

*Kelly Toys Holdings, LLC. v. Top Department Store*,
No. 22-cv-558 (PAE), 2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022) ....................31, 32, 34

*Kipling Apparel Corp. v. Rhys*,
No. 16-cv-990 (RJS), 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016) ....................2, 12, 26, 37

*Klipsch Group, Inc. v. Big Box Store Ltd.*,
No. 12-cv-6283 (AJN), 2012 WL 4901407 (S.D.N.Y. Oct. 11, 2012) ....................27

*Krause International, Inc. v. Reed Elsevier, Inc.*,
866 F. Supp. 585 (D.D.C. 1994) ....................23

*Levi Strauss & Co. v. Sunrise International Trading Inc.*,
51 F.3d 982 (11th Cir. 1995) ....................27, 28

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*,
15-cv-8459 (LGS), 2016 WL 3748480 (S.D.N.Y. July 8, 2016) ....................13

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co.*,
No. 19-cv-04715, 2019 WL 7599931, (S.D.N.Y. May 29, 2019) ....................2, 11, 12, 26

*Malarkey-Taylor Associates, Inc. v. Cellular Telecommunications Industry. Ass'n*,
929 F. Supp. 473 (D.D.C. 1996) ....................23

*Mattel, Inc. v. AnimeFun Store*,
No. 18-cv-8824 (LAP), 2021 WL 765766 (S.D.N.Y. Feb. 26, 2021) ....................20

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
312 F.3d 94 (2d Cir. 2002) ....................22

*Mister Softee, Inc. v. Tsirkos*,
No. 14-cv-1975 (LTS)(RLE), 2015 WL 7458619 (S.D.N.Y. Nov. 23, 2015) ....................21

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d. 305 (S.D.N.Y. 2010) ....................20, 24

*Next Phase Distribution, Inc. v. John Does 1–27*,
284 F.R.D. 165 (S.D.N.Y. 2012) ....................29

*NYP Holdings v. New York Post Publishing Inc.*,
63 F. Supp. 3d 328 (S.D.N.Y. 2014) ....................22, 24

*Omega Importing Corp. v. Petri-Kine Camera Co.*,
451 F.2d 1190 (2d Cir. 1971) ....................21, 22

*Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co.*,
No. 25-cv-2732 (MMG), 2025 WL 1276618 (S.D.N.Y. Apr. 29, 2025) ....................36

*Pearson Education, Inc. v. Labos*,
No. 19-cv-0487 (CM), 2019 WL 1949820 (S.D.N.Y. Apr. 23, 2019) ....................21

*Philip Morris USA Inc. v. Felizardo*,
No. 03-cv-5891 (HB), 2004 WL 1375277 (S.D.N.Y. June 18, 2004)....................20

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492 (2d Cir. 1961) ....................15

*Rathmann Group v. Tanenbaum*,
889 F.2d 787 (8th Cir. 1989) ....................36

*Reebok International, Ltd. v. Marnatech Enterprises., Inc.*,
970 F.2d 552 (9th Cir. 1992) ....................27, 28

*Rio Properties, Inc. v. Rio International Interlink*,
284 F.3d 1007 (9th Cir. 2002) ....................30, 31, 34, 35

*Rovio Entertainment, Ltd. v. Allstar Vending, Inc.*,
97 F. Supp. 3d 536 (S.D.N.Y. 2015) ....................23

*Salvatore Ferragamo S.p.A. v. Does 1-56*,
No. 18-cv-12069 (JPO), 2020 WL 774237 (S.D.N.Y. Feb. 18, 2020)....................17, 19, 20, 22

*Shashi, Inc. v. Ramada Worldwide, Inc.,*
No. 5-cv-00016, 2005 WL 552593 (W.D. Va. Mar. 1, 2005) ....................24

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*,
164 F.4th 164 (2d Cir. 2025) ....................32

*Spin Master Ltd., v. Alan Yuan's Store*,
325 F. Supp. 3d 413 (S.D.N.Y. 2018) ....................17, 19, 20

*Topps Co. v. Gerrit J. Verburg Co.*,
No. 96-cv-7302 (RWS), 1996 WL 719381 (S.D.N.Y. Dec. 13, 1996) ....................15

*Ty, Inc. v. GMA Accessories, Inc.*,
132 F.3d 1167 (7th Cir. 1997) ....................21



vi

*Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*,
No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. April 5, 2021).................................. passim

*WowWee Group Ltd. v. Haoqin*,
No. 17-cv-9893, 2019 WL 1316106 (S.D.N.Y. Mar. 22, 2019)..........................................34

*WPIX, Inc. v. ivi, Inc.*,
691 F.3d 275 (2d Cir. 2012) ..........................................................................21, 23

*Zuru (Singapore) Pte., Ltd. v. Individuals, Corps., Ltd. Liability Cos., Partnerships, & Unincorporated Ass'ns Identified on Schedule A Hereto*,
No. 22-cv-2483 (LGS), 2022 WL 14872617 (S.D.N.Y. Oct. 26, 2022) ...............................32

**Statutes**

15 U.S.C. § 1051 et seq.............................................................................................12

15 U.S.C. § 1057(b) ..................................................................................................16

15 U.S.C. § 1114(1) ..................................................................................................14

15 U.S.C. § 1116(a) ..................................................................................................25

15 U.S.C. § 1117(a) ...............................................................................................3, 27

15 U.S.C. § 1125(a) ..................................................................................................16

17 U.S.C. § 101 et seq...............................................................................................12

17 U.S.C. § 501(b) ....................................................................................................17

17 U.S.C. § 502.....................................................................................21, 22, 25

17 U.S.C. § 503.....................................................................................21, 22, 25

17 U.S.C. § 504.....................................................................................................3, 27

28 U.S.C. § 1331.......................................................................................................12

28 U.S.C. § 1367(a) ..................................................................................................12

28 U.S.C. § 1391.......................................................................................................12

28 U.S.C. § 1400.......................................................................................................12

**Other Authorities**

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (5th ed. 2025)..........................................................................................................28

5 J. Thomas McCarthy*, Callmann on Unfair Competition, Trademarks and Monopolies* (4th ed.) ....................21

Hague Convention, Art. 15 ....................35

**Rules**

Fed. R. Civ. P. 26 ....................29

Fed. R. Civ. P. 4 .................... passim

Fed. R. Civ. P. 64 ....................28, 29

Fed. R. Civ. P. 65 ....................11, 14, 30, 36

N.Y. C.P.L.R. § 302(a) ....................12, 13

N.Y. C.P.L.R. § 6201 ....................29

N.Y. C.P.L.R. § 6212(a) ....................28

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This application (the "Application") arises from Defendants'[1] improper marketing and sale of counterfeit products online. Plaintiff LUCKY EGG LIMITED designs and develops a distinctive line of viral party games that is supported by strong social media-driven brand recognition (the "LUCKY EGG Products"). The LUCKY EGG Products are the subject of Plaintiff's trademarks, which are covered by U.S. Trademark Registration Nos. 7,008,500; 7,868,153; and 7,976,466 (the "LUCKY EGG Trademarks") as well as Plaintiff's copyright, covered by U.S. Copyright Office Registration No. VA 2-464-221 (the "LUCKY EGG Copyright"). The LUCKY EGG Trademarks and LUCKY EGG Copyright are collectively referred to as the "LUCKY EGG Intellectual Property."

Defendants have violated Plaintiff's intellectual property rights by promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit versions of the LUCKY EGG Products. As the examples below and in the Complaint make clear, this is not a close case; Defendants are blatantly copying the LUCKY EGG Intellectual Property and selling knock-off LUCKY EGG Products as if they were genuine. This illicit conduct is being carried out through various online marketplace accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores").

As is common with these sorts of ecommerce counterfeiters, Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff has filed this action to combat Defendants' infringement and counterfeiting of the LUCKY EGG Intellectual Property, as well as to protect consumers from

---

[1] The Defendants are a collection of foreign ecommerce counterfeiters, identified in Schedule A attached to the Complaint.

unknowingly purchasing counterfeit LUCKY EGG Products over the internet. In that regard, Plaintiff seeks to enjoin Defendants' ongoing unlawful activities, and Plaintiff respectfully requests that this Court issue *ex parte* relief, including:

(1) a temporary restraining order against Defendants, enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit products bearing, using, or infringing upon Plaintiff's LUCKY EGG Intellectual Property (the "Counterfeit Products");

(2) a temporary restraint of certain of Defendants' assets, described below, to preserve Plaintiff's right to an equitable accounting;

(3) expedited discovery allowing Plaintiff to inspect and copy Defendant's' records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit Products, as well as of Defendants' financial accounts;

(4) permission to effectuate service by electronic mail and electronic publication; and

(5) an order directing Defendants to show cause why a preliminary injunction should not issue on the return date of the Application.

In light of the covert nature of offshore counterfeiting activities being undertaken by Defendants and the vital need to establish an economic disincentive for counterfeiting, courts regularly issue orders awarding such relief.[2]

Plaintiff's well-pleaded allegations, which are supported by the Declarations submitted in connection with this Application, make clear that such relief is necessary and proper. First, Plaintiff has demonstrated a strong likelihood of success on the merits. Plaintiff owns the LUCKY EGG Intellectual Property and, along with its authorized retailers and distributors, is the exclusive

[2] *See, e.g.*, *Lindsey Adelman Studio, LLC v. ZORA Lighting Co.,* No. 19-cv-04715, 2019 WL 7599931, (S.D.N.Y. May 29, 2019); *Cengage Learning, Inc. v. Doe 1*, No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018); *Allstar Mktg. Grp., LLC v. BackforthTradeltd,* No. 20-cv-9073 (PAE), 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020); *Kipling Apparel Corp. v. Rhys,* No. 16-cv-990 (RJS), 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016); *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. April 5, 2021); *Allstar Mktg. Grp., LLC v. 53 Romantic House Store*, No. 20-cv-9072 (PAE), 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020); *In re Vuitton et Fils*, *S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

distributor of genuine LUCKY EGG Products. Defendants' unauthorized use of Plaintiff's intellectual property to sell Counterfeit Products has irreparably harmed and continues to irreparably harm Plaintiff by diminishing Plaintiff's goodwill in its products, damaging Plaintiff's reputation, and causing consumer confusion. Monetary damages are inadequate to compensate Plaintiff for these harms. Defendants, by contrast, face no cognizable harm whatsoever if they are enjoined from continuing with their misconduct. This makes injunctive relief particularly appropriate.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit Products, in addition to promoting general respect for trademark and copyright laws. The public has a right to know what it is purchasing.

Further, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504. Finally, an order authorizing service of process by e-mail and electronic publication is appropriate due to Defendants' intentional efforts to conceal their identities and covertly operate their business online. Serving Defendants electronically is the best—likely the only—method for notifying them of this action and providing them the opportunity to defend and present their objections.

Stated simply, the relief sought in this action is necessary to protect Plaintiff's legitimate interests in the LUCKY EGG Trademarks, LUCKY EGG Copyright and LUCKY EGG Products. Accordingly, Plaintiff respectfully requests entry of its proposed order in its entirety.

## II. RELEVANT FACTS

### A. Plaintiff's Intellectual Property Protects Its Successful LUCKY EGG Brand

Plaintiff designs and develops a distinctive line of viral party games that is supported by strong social media-driven brand recognition. *See* Declaration of Lorna Cruickshank (the

"Cruickshank Decl.") ¶ 7. Its games have garnered massive popularity; they have landed on the top 10 board game chart on Amazon UK,[3] played on television by movie star Chris Tucker and music legends Marlon and Jackie Johnson of the Jacksons (formerly known as the Jackson 5),[4] and won People's Choice Award for Best Party Game at the UK Games Expo.[5] These games can be purchased in many major retailers in the United States, including Amazon, Target, Walmart, and Barnes & Noble. *Id.*

Since their introduction, the LUCKY EGG Products have been and are the subject of substantial and continuous marketing and promotion by Plaintiff in the industry and to consumers. *Id.* ¶ 9. For example, Plaintiff promotes LUCKY EGG Products through its website (https://luckyegg.co/), through trade shows such as the London Toy Fair, and through marketing campaigns across the internet. *Id.* Further, Plaintiff extensively promotes LUCKY EGG Products on social media such as Instagram (over 216,000 followers) and TikTok (over 253,400 followers). *Id.* Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the LUCKY EGG Products. *Id.* As a result, products bearing the LUCKY EGG Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.*

---

3 Luke Shelley, *How we hit top 10 Amazon board game Grab The Mic*, LinkedIn (last visited Apr. 28, 2026), https://www.linkedin.com/posts/luke-t-shelley_heres-how-we-made-a-top-10-amazon-board-activity-7239900794248990720-oQkM.

4 Morning News, *Marlon Jackson, Jackie Jackson and Chris Tucker join us for Grab The Mic Karaoke!*, Chicago's Very Own WGN 9 (Aug. 29, 2025, at 12:15pm), https://wgntv.com/video/marlon-jackson-jackie-jackson-and-chris-tucker-join-us-for-grab-the-mic-karaoke/11028105/.

5 Billy Langsworthy, *Lucky Egg's Sorry What!? Scoops People's Choice Award for Best Party Game at UK Games Expo*, Mojo Nation (June 6, 2024), https://www.mojo-nation.com/lucky-eggs-sorry-what-scoops-peoples-choice-award-for-best-party-game-at-uk-games-expo/.

Plaintiff safeguards its brand and investment in the LUCKY EGG Products by way of intellectual property protections. Plaintiff is the registered owner of the LUCKY EGG Trademarks, which have been continuously used and never abandoned. *Id.* ¶ 10. Plaintiff also owns all exclusive rights for the LUCKY EGG Copyright, including without limitation, the rights to reproduce the copyrighted designs in copies, to prepare derivative works based upon the copyrighted designs, and to distribute copies of the copyrighted designs to the public by sale or other transfer of ownership, or by rental, lease, or lending. *Id.*

**B. <u>Defendants Are Counterfeiters of LUCKY EGG Products</u>**

The success of the LUCKY EGG Products has resulted in significant counterfeiting of the same. Cruickshank Decl. ¶ 11. Plaintiff has identified numerous Defendant Internet Stores that sell Counterfeit Products from foreign countries to consumers in this Judicial District. *Id.*

For example, here are some images of genuine LUCKY EGG Products incorporating the LUCKY EGG Intellectual Property:







Cruickshank Decl. ¶ 8.

And here are images of some counterfeits sold by the Defendants:




Cruickshank Decl. Ex. 3, part 5 p. 27.




Cruickshank Decl. Ex. 3, part 1 p. 96.

Internet websites like the Defendant Internet Stores contribute to the hundreds of billions of dollars of infringing goods sold each year and pose a threat to economic growth and innovation across the world. *See* Declaration of Christopher Tom (the "Tom Decl.") ¶ 2 and Ex. 1. For instance, according to an intellectual property rights seizures-statistics report issued by U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone. *Id.* ¶ 3 and Ex. 2.

1. Defendants Operate Legitimate-Looking Internet Stores

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine LUCKY EGG Products. Cruickshank Decl. ¶ 21. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, eBay and PayPal. *Id.* The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* But Plaintiff has not licensed or authorized Defendants to use the LUCKY EGG Intellectual Property and none of the Defendants is an authorized retailer of genuine LUCKY EGG Products. *Id.* ¶ 19.

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines

Defendants also deceive unknowing consumers by using the LUCKY EGG Intellectual Property without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for LUCKY EGG Products. Cruickshank Decl. ¶ 22. Additionally, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the listings for the Defendant Internet Stores show up at or near the top of relevant search results and misdirect consumers searching for genuine LUCKY EGG Products. *Id.* Defendants often utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.*

3. Defendants Conceal Their Identities

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

Cruickshank Decl. ¶ 23. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete or fail to include cities or states. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* These are some of the many common tactics used by the Defendants to conceal their identities—and the full scope and interworking of their massive counterfeiting operation—to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* ¶ 24. The Counterfeit Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated. *Id.*

4. Defendants Evade Enforcement

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. Cruickshank Decl. ¶ 25. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id.* Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *Id.* Rogue servers are notorious for ignoring take-down demands sent by brand owners. *Id.* Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.*

Additionally, counterfeiters such as Defendants typically operate multiple credit card

merchant accounts as well as marketplace platform accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts. *Id.* ¶ 26. Further, such counterfeiters typically maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.*

Overall, Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants actively consort to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the LUCKY EGG Intellectual Property in the same transaction, occurrence, or series of transactions or occurrences.

As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeiting network, and the relationship among Defendants. If Defendants provide additional credible information regarding their identities, Plaintiff intends to take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the LUCKY EGG Intellectual Property. Cruickshank Decl. ¶¶ 27–32. To stop Defendants' sale of Counterfeit Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the stop of any listings or sale of products infringing upon the LUCKY EGG Intellectual Property and the freezing of Defendants' assets. Without the relief

requested by Plaintiff's Application, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the LUCKY EGG Intellectual Property via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Counterfeit Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the LUCKY EGG Intellectual Property and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will change to a new online store or platform and move any assets from U.S.-based bank accounts, including PayPal accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *Weili Fang,* 2021 WL 1249631, at *2 ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio*, 2019 WL 7599931, at *2 ("Defendants may easily and quickly transfer the registrations of their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby

thwarting Plaintiffs' ability to obtain meaningful relief."). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the trademark infringement, copyright infringement, and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the unfair competition claim in this action that arises under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

### A. <u>This Court May Exercise Personal Jurisdiction Over Defendants</u>

Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores transacted business in New York by accepting orders of Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Courts in the Southern District of New York regularly exercise personal jurisdiction over websites using registered trademarks and/or copyrights without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to New York residents over the Internet. *See Weili Fang,* 2021 WL 1249631, at *1; *BackforthTradeltd*, 2020 WL 6700503, at *1–2 (preliminary injunction order after granting TRO); *53 Romantic House Store*, 2020 WL 6700481, at *1–2 (preliminary injunction order after granting TRO); *Lindsey Adelman Studio*, 2019 WL 7599931, at *1; *Cengage Learning*, 2018 WL 2244461, at *1; *Kipling Apparel Corp.*, 2016 WL 8814345, at *1–2.

Similarly, this Court has exercised personal jurisdiction over defendants who have offered and sold counterfeit and infringing products through third-party stores on online marketplaces such as Amazon, even though these stores have claimed they do control their storefronts in the same manner independent websites do. *See Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, 15-cv-8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) Despite that alleged lack of control, courts can still assert jurisdiction over "internet sellers who use an internet storefront like Amazon" when such sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id.* (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11–cv–3458 (JS)(ETB), 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012).

Further, the Second Circuit recently affirmed that courts in this Judicial District could exercise personal jurisdiction over an internet store based in China that accepted orders for counterfeit dolls to be shipped to New York under C.P.L.R. § 302(a)(1), even though the orders were later cancelled and the product was never shipped into New York. *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276–77 (2d Cir. 2024). As that court explained, the "single act" requirement to establish personal jurisdiction in New York does not require actual shipment of a product to New York but only a transaction, even if that sale was later cancelled and refunded. *Id.* at 277–278 (clarifying that its decision in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) did not depend on the shipment of good but "rather on the fact that a single act can potentially suffice for establishing personal jurisdiction" in New York).

As detailed in the Complaint and in the Cruickshank Decl., Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores allow for Counterfeit Products to be sold and shipped to addresses in this Judicial District. *See* Cruickshank Decl. ¶ 17. Exhibit 3 to the Cruickshank Decl. contains screenshots from each Defendant Internet Store reflecting the

marketing and ability to order Counterfeit Products to the Southern District of New York. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

**B. Standard for a Temporary Restraining Order and Preliminary Injunction**

The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020). A party seeking to obtain either must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the Plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *Id*.

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning*, 2018 WL 2244461, at *1 (quoting Fed. R. Civ. P. 65(b)(1)).

**C. Plaintiff Will Likely Succeed on the Merits**

1. Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim.

Defendants are liable for trademark infringement and counterfeiting under the Lanham Act if they, "without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Courts analyze trademark infringement claims under the Lanham Act under a two-prong test: (1) whether the Plaintiff's mark is entitled to

protection and (2) whether Defendant's use of the mark is likely to cause confusion. *Guthrie Healthcare Sys. v. ContextMedia, Inc.,* 826 F.3d 27, 37 (2d Cir. 2016) (citing cases); *Spin Master*, 325 F. Supp. 3d at 420; *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.,* 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019).

"The first prong is satisfied by showing that a mark is valid and registered, owned by a registrant, and that the registrant has the exclusive right to use the mark in commerce." *Spin Master*, 325 F. Supp. 3d at 421. A valid certificate of registration of the asserted mark satisfies this standard. *BBK Tobacco & Foods*, 408 F. Supp. 3d at 520.

Once a plaintiff has established that its mark is entitled to protection, courts in this Circuit apply the eight "*Polaroid* factors" balancing test to determine whether the defendant's use of the mark is likely to cause confusion. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Because counterfeit marks are inherently confusing, however, "courts in this District generally agree that 'where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each Polaroid factor because counterfeit marks are inherently confusing.'" *Spin Master*, 325 F. Supp. 3d at 421 (quoting *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (citing cases); *Topps Co. v. Gerrit J. Verburg Co.*, No. 96-cv-7302 (RWS), 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors."). "The sale of counterfeit goods is sufficient use to establish liability." *Spin Master*, 325 F. Supp. 3d at 422.

On the first prong, Plaintiff's LUCKY EGG Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The LUCKY EGG Trademarks have been continuously used since at least 2024 and Plaintiff has

promoted and continues to widely promote the LUCKY EGG Trademarks in the industry and to consumers. Cruickshank Decl. ¶ 9. The registrations for the LUCKY EGG Trademarks are valid, subsisting, and in full force and effect. *Id.* ¶ 4 & Ex. 1. The registrations for the LUCKY EGG Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the LUCKY EGG Trademarks pursuant to 15 U.S.C. § 1057(b). Further, Plaintiff has not licensed or authorized Defendants to use the LUCKY EGG Trademarks, and none of the Defendants is an authorized retailer of genuine LUCKY EGG Products. *Id.* ¶ 19.

Second, Plaintiff has established a likelihood of confusion. The Defendants are selling Counterfeit Products using counterfeit marks identical to or substantially indistinguishable from the LUCKY EGG Trademarks, and in respect of goods identical to the genuine LUCKY EGG Products. Due to their long-standing use and wide acceptance by the public, the LUCKY EGG Trademarks have become famous and associated with high quality LUCKY EGG Products. The LUCKY EGG Trademarks are distinctive when applied to the LUCKY EGG Products. The marks signify to consumers that the products come from Plaintiff and are manufactured to the highest quality standards. Because the counterfeit goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine LUCKY EGG Products or are sponsored or endorsed by Plaintiff. Moreover, Defendants are intentionally using the LUCKY EGG Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit Products are manufactured by or emanate from Plaintiff. Defendants are purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation.

Plaintiff has thus established that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

2. <u>Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim.</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must

show that: (1) the plaintiff has a valid, protectable trademark; and (2) a likelihood of confusion will exist as to the origin of the plaintiff's products. *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18-cv-12069 (JPO), 2020 WL 774237, at *2 (S.D.N.Y. Feb. 18, 2020). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *Spin Master*, 325 F. Supp. 3d at 423. Because the LUCKY EGG Trademarks are registered marks and Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants, as shown above, a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

3. Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). Copyright infringement, like trademark infringement, is a strict liability offense. *Spin Master Ltd., v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018).

Here, Plaintiff is likely to succeed on the merits of its copyright infringement claim. First, Plaintiff owns all exclusive rights in the LUCKY EGG Copyright. Cruickshank Decl. ¶ 5; 17 U.S.C. § 501(b) (noting the legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement).

Second, Plaintiff has shown that Defendants have made unauthorized copies of Plaintiff's LUCKY EGG Copyright, and/or, alternatively, Defendants' representations of Plaintiff's LUCKY EGG Copyright in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's LUCKY EGG Copyright and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's Copyright for the LUCKY EGG Products. Cruickshank Decl. ¶ 12. As just one example,

Defendants deceive unknowing consumers by using the LUCKY EGG Copyright without authorization within the products sold at and product photographs displayed at the Defendant Online Stores to attract customers as follows:

*Exemplary Images of Plaintiff's Registered Copyright Work*




Cruickshank Decl. ¶ 8 and Ex. 2.

*Compared to Exemplar Counterfeit LUCKY EGG Products Sold by Defendants*




Cruickshank Decl. Ex. 3, part 6 p. 41.

Overall, it is clear that Defendants have copied the LUCKY EGG Copyright without Plaintiff's consent.

4. Plaintiff Is Likely to Succeed on Its New York Unfair Competition Claim.

The elements of an unfair competition claim "under New York common law mirror the Lanham Act claims except that unfair competition requires an additional showing of bad faith." *Ferragamo*, 2020 WL 774237, at *4 (internal quotations and citations omitted). "The essence of a claim for unfair competition under New York law is that the defendant has misappropriated the labors and expenditures of another in a manner likely to cause confusion or to deceive purchasers as to the origin of the goods." *Spin Master*, 325 F. Supp. 3d at 424 (internal quotations and citations omitted). "'Under New York law, a presumption of bad faith attaches to the use of a counterfeit

mark.'" *Ferragamo*, 2020 WL 774237, at *4 (quoting *Philip Morris USA Inc. v. Felizardo*, No. 03-cv-5891 (HB), 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004); *Mattel, Inc. v. AnimeFun Store*, No. 18-cv-8824 (LAP), 2021 WL 765766, at *7 (S.D.N.Y. Feb. 26, 2021) (same); *Spin Master*, 325 F. Supp. 3d at 424 (citing cases).

Because Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants, as shown above, bad faith is presumed, and therefore Plaintiff has established a likelihood of success on the merits for its New York Unfair Competition claim.

### D. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable harm warranting the issuance of a temporary restraining order exists when a defendant infringes either a trademark or a copyright. Here, because Defendants have made unauthorized use of the LUCKY EGG Intellectual Property, Plaintiff has been irreparably harmed and will continue to be so harmed unless the Court enjoins Defendants' infringement.

In the context of trademark infringement, it is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d. 305, 325 (S.D.N.Y. 2010). When infringement leads to confusion, "the requisite irreparable harm is established as a matter of course." *Id.* at 325–26. "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986). As such, the inability of the trademark holder to control the quality of the infringing goods sold constitutes irreparable harm, *3M Co.,* 458 F. Supp. 3d at

192, and monetary damages are likely to be inadequate compensation for such harm. *See also* 5 *Callmann on Unfair Competition, Trademarks and Monopolies* § 23B:4 (4th ed.).

While loss of goodwill is "more commonly associated with trademark cases, [] it is also applicable to copyright as well." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1173 (7th Cir. 1997). In the Second Circuit, courts have found irreparable harm in copyright cases where the infringement "would substantially diminish the value" of the work, "losses would be difficult to measure," and "monetary damages would be insufficient to remedy the harms." *Hudson Furniture, Inc. v. Mizrahi*, No. 20-cv-4891 (PAC), 2020 WL 5202118, at *6 (S.D.N.Y. Sep. 1, 2020) (citing *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012)). It is well settled, for example, that using another's copyright to create consumer confusion and loss of goodwill constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *See id.* (noting "harm to [a] brand, consumer confusion, and loss of goodwill . . . constitute[] irreparable harm"); *Pearson Educ., Inc. v. Labos*, No. 19-cv-0487 (CM), 2019 WL 1949820, at *6 (S.D.N.Y. Apr. 23, 2019); *see also Mister Softee, Inc. v. Tsirkos*, No. 14-cv-1975 (LTS)(RLE), 2015 WL 7458619, at *5 (S.D.N.Y. Nov. 23, 2015) (finding irreparable harm because "Plaintiffs have no actual control over the quality of Defendant's products or services"); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement and enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Indeed, irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

In the context of copyright infringement, the Second Circuit has held that the harm to the plaintiff's property interest is irreparable in light of possible market confusion. *See Merkos*

*L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96–97 (2d Cir. 2002) ("Since [the defendant] sells essentially the same product as [the plaintiffs] to the same market, it will obviously suffer considerable loss if [the defendant] disseminates its [infringing products], because each sale of an [infringing product] probably results in one less sale of the [plaintiffs' product]. [Plaintiffs] thus satisfies the 'irreparable harm' prong of the preliminary injunction standard."); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Further, courts have held that "'the most corrosive irreparable harm' attributable to copyright infringement is the victim's inability to control the nature and quality of the infringer's goods," *Jefferson v. Johnson Publ'g, Inc.*, No. 92-cv-7011, 1992 WL 318615, at *2 (N.D. Ill. Oct. 28, 1992) (citing cases), and that monetary damages are likely to be inadequate compensation for such harm. *See Omega Importing*, 451 F.2d at 1195; *see also Ideal Indus., Inc. v. Gardener Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Here, Defendants' unauthorized use of the LUCKY EGG Intellectual Property, along with their substantial efforts to mislead and confuse consumers, has irreparably harmed and continue to irreparably harm Plaintiff through diminished goodwill and brand confidence, reputational damage, loss of exclusivity, and loss of future sales. *See* Cruickshank Decl. ¶¶ 27–32. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341–42 (S.D.N.Y. 2014); *Ferragamo*, 2020 WL 774237, at *5; *see also CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011) (the extent of the harm to plaintiffs resulting from "[i]njecting the market with counterfeit products will not only

result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and effort. This type of harm cannot be redressed by monetary damages available at law.").

**E. The Balancing of Equities Tips in Plaintiff's Favor**

"It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [the Plaintiffs'] brand." *3M Co.,* 458 F. Supp. 3d at 197; *WPIX, Inc. v. ivi, Inc.,* 691 F.3d 275, 287 (2d Cir. 2012) ("an […] infringer cannot complain about the loss of ability to offer its infringing product"); *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015). If a "defendant appears to be a brazen infringer," a defendant should receive little equitable consideration from the Court. *Am. Greetings Corp. v. Kleinfab Corp.*, 400 F. Supp. 228, 234 (S.D.N.Y. 1975); *see also Bulgari S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No 14-cv-4819, 2014 WL 3749132, at *6 (N.D. Ill. July 18, 2014) ("As willful infringers, Defendants are entitled to little equitable consideration"); *Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994). ("When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner."). In that regard, where the evidence shows that a defendant has knowingly engaged in infringing activities, "it follows that the defendant is not legally harmed by the fact that it cannot continue [its misconduct] even if this ultimately puts [the defendant] out of business." *WPIX, Inc.*, 691 F.3d at 287; *see also Rovio Ent.*, 97 F. Supp. 3d at 547; *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ("[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived.") (internal quotation marks omitted); *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996) ("the balance of harms cannot favor a defendant whose injury results from the knowing infringement on the plaintiff's trademark."); *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970) ("To the plaintiff its name is at stake, and continued injury to its

reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them.").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in Plaintiff's favor.

**F. <u>Issuance of the Injunction Is in the Public Interest.</u>**

An injunction serves the public interest in this case because "it will preserve the integrity of the copyright laws, which embody an important national policy of encouraging creativity." *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1332–33 (N.D. Ill. 1990) (citation omitted). Further, federal courts have long held that in addition to protecting the property rights of an individual, intellectual property laws are also concerned with the protection of the public from being deceived. *N.Y.C. Triathlon*, 704 F. Supp. 2d at 344 ("[T]he public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.") (internal citations omitted); *NYP Holdings*, 63 F. Supp. 3d at 342 (consumers have a "protectable interest in being free from confusion, deception and mistake"); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 5-cv-00016, 2005 WL 552593, at *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion.").

Here, an injunction is in the public interest because it will stop Defendants from violating federal intellectual property law and prevent consumer confusion. "[I]t is uncontested that there exists a strong policy in favor of defending Copyright" and Plaintiffs "assert[s] an action to enforce their U.S. copyrights, an area in which the U.S. has a strong public interest." *CJ Prods. v. Snuggly Plushez*, 809 F. Supp. 2d at 146 (internal citations and quotations omitted). Further, the public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case

because "[t]rademark laws exist to protect the public from confusion." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107–08 (2d Cir. 2000); *see also ISC-Bunker Ramo Corp.*, 765 F. Supp. at 1332–33 (N.D. Ill. 1990) (injunction serves the public interest by preserving the integrity of the copyright laws); *CJ Prods. LLC v. Concord Toys Int'l, Inc.*, No. 10–cv–5712 (ENV)(JO), 2011 WL 178610, at *6 (E.D.N.Y. Jan. 19, 2011) ("In light of the significant public policy concerns regarding the sale and distribution of children's toys without any assurance or labels indicating that defendants' products comply with federal and state health and safety requirements, the public interest strongly favors plaintiffs").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of the LUCKY EGG Intellectual Property is enjoined, the public will continue to be confused and misled by Defendants' conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.

The scope of the injunctive relief sought by Plaintiff here is appropriate under Rule 65, the Lanham Act, and the Copyright Act. In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark" 15 U.S.C. § 1116(a); see also 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded

and destroyed).

### A. **Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.**

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the LUCKY EGG Intellectual Property on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the LUCKY EGG Intellectual Property and associated goodwill, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of the LUCKY EGG Intellectual Property.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Products.

Many courts in this district have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Weili Fang,* 2021 WL 1249631; *Lindsey Adelman Studio,* 2019 WL 7599931; *Cengage Learning,* 2018 WL 2244461; *Kipling Apparel Corp.,* 2016 WL 8814345.

### B. **Preventing the Fraudulent Transfer of Assets Is Appropriate.**

Plaintiff also requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired. Plaintiff has good cause to suspect the Defendants are residents of China, Hong Kong, Japan and Pakistan. See Declaration of Yingchun Hou ("Hou Decl.") Ex. 1, Cruickshank Decl. Ex. 3. In Plaintiff's experience, foreign merchants selling counterfeit products will operate multiple credit card and third-party payment processing accounts, so they continue operating in spite of efforts to prevent their illegal actions. Cruickshank Decl. ¶ 26. Further, counterfeiters such as Defendants

will typically maintain offshore bank accounts and will move from their third-party payment processing accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.* Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered.

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint seeks relief in equity. *Cengage Learning,* 2018 WL 2244461, at *3 ("where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, because Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, the Lanham Act provides that Plaintiff is entitled, "subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a)(1); *see also* 17 U.S.C. § 504 ("The copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. *See Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-cv-6283 (AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable authority powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases). Therefore, this Court has the inherent equitable authority to grant

Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

This District previously entered an asset restraining order in a trademark and copyright infringement case brought by textbook publishers against defendants engaged in the sale of counterfeit textbooks through online marketplaces. *Cengage Learning,* 2018 WL 2244461, at *3–4. The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* at *3 (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329–33 (1999)); *see also Gucci Am., Inc. v. Weixing Li,* No. 10-cv-4974 (RJS), 2011 WL 6156936, at *3 (S.D.N.Y. Aug. 23, 2011), *aff'd in relevant part and vacated on other grounds*, 768 F.3d 122 (2d Cir. 2014) (same), *see also Balenciaga Am., Inc. v. Dollinger*, No. 10-cv-2912 (LTS), 2010 WL 3952850, at *7 (S.D.N.Y. Oct. 8, 2010) (finding because the publishers sought an accounting of the defendants' profits, an equitable remedy, the Court found that it had the authority to freeze the defendants' assets*)*; *see also Animale Grp. Inc.*, 256 F. App'x at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l, Ltd*, 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 998 (7th Cir. 2002) ("Since the assets in question here were the profits of the [defendants] made by unlawfully stealing [plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (5th ed. 2025).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.[6]

---

[6] Alternatively, the Court may grant a pre-judgment attachment of Defendants' domestic assets under Federal Rule of Civil Procedure 64 and N.Y. C.P.L.R. § 6212(a). Rule 64 authorizes "[e]very remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). The

### C. Plaintiff Is Entitled to Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1–27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage*, 2018 WL 2244461 at *4 (citing *Next Phase Distrib*., 284 F.R.D. at 171.). Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *adMarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, AliPay and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment-system accounts Defendants use for their counterfeit sales operations. The discovery requested on an

---

rule specifically mentions attachment as an available remedy. Fed. R. Civ. P. 64(b). And the C.P.L.R. permits attachment upon a showing "that there is a cause of action, that it is probable that the plaintiffs will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiffs." C.P.L.R. § 6212(a). Here, Plaintiff will succeed on the merits for the reasons given above, and attachment is appropriate for either of at least two reasons. First, C.P.L.R. § 6201(1) authorizes attachment if "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." And second, C.P.L.R. § 6201(3) permits attachment if "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiffs' favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Here, the Defendants appear to be foreign entities, and there is a substantial risk that they will remove assets outside of the jurisdiction absent injunctive relief or attachment.

expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. As Defendants have engaged in many deceptive practices to hide their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### D. **Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests authorization to serve process by e-mail and by electronically publishing a link to the Complaint, the Temporary Restraining Order, the papers supporting this Application, and any other relevant documents on a website to which the Defendant Internet Stores will be transferred (the "Link"). Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement. *See Google LLC v. Doe 1,* No. 25-cv-10440 (JSR), 2026 WL 353660, at *2 (S.D.N.Y. Feb. 9, 2026); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). This Court has held that service through email and website publication is "reasonably calculated, under all the circumstances, to apprise [defendants] of the

pendency of the action." *Google LLC*, 2026 WL 353660, at *2 (quoting *Kelly Toys Holdings, LLC. v. Top Dep't Store*, No. 22-cv-558 (PAE), 2022 WL 3701216, at *9 (S.D.N.Y. Aug. 26, 2022)). Further, the Ninth Circuit in *Rio Properties* held, "[w]ithout hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Likewise, in Plaintiff's experience with similar defendants in other matters, Defendants are almost certain to regularly rely on and use the e-mail addresses that the Defendants provide to eBay, Shein and Temu and other third-party payment processers to communicate concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail addresses from eBay, Shein and Temu is often the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of counterfeit products. *See* Cruickshank Decl. ¶ 20. Authorizing service of process via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously.

1. Defendants' Addresses for Service Are Not Known

Plaintiff has good cause to suspect the Defendants are residents of China, Hong Kong, Japan and Pakistan. *See* Hou Decl. Ex. 1. The United States, the People's Republic of China, Hong Kong Special Administrative Region of the People's Republic of China, Japan and the Islamic Republic of Pakistan are signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). *See* Tom Decl. ¶ 4. However, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id.* ¶ 4 & Ex. 3; *see also Google LLC*, 2026 WL 353660, at *1 (finding plaintiff was not bound by Hague

Convention after it made reasonable efforts to locate defendants); *Kelly Toys Holdings*, 2022 WL 3701216, at *9 (finding plaintiff was not bound by Hague Convention after it made reasonable efforts to locate defendants and could serve defendants via electronic methods after *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025)); *Zuru (Singapore) Pte., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 22-cv-2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (finding electronic service was proper under Rule 4(f)(3) when defendants did not provide accurate physical addresses); *Cengage Learning*, 2018 WL 2244461, at *4–5 (same).

In this case, Plaintiff, through its representatives, investigated the feasibility of effecting service of physical documents on the Defendants utilizing the eBay, Shein and Temu marketplace platforms. Specifically, Plaintiff has investigated the viability of serving this set of defendants with physical documents. Plaintiff has utilized a specialized investigative firm, Panoramic Consulting Ltd. ("Panoramic"), with over 15 years of experience researching online merchants in China in addition to extensive experience investigating other countries. *See* Hou Decl. ¶¶ 3–4. Panoramic conducted a multi-layered inquiry into each Defendant's purported physical address and contact information as listed on their seller/store profile pages. *Id.* ¶ 5. Panoramic performed comprehensive searches using multiple independent data sources, including Tianyancha, a major platform aggregating Chinese government registration data and corporate records, and Baidu.com, China's leading and largest search engine and mapping system, which compiles business information from authoritative national databases. *Id.* ¶¶ 5–7.

In addition to researching the listed addresses of these Defendants, Panoramic researched and attempted to identify each store's registered telephone number listed with the marketplace platform, or where a number was not listed, the telephone number identified through additional

research tied to the listed physical addresses. *Id.* ¶ 8. Panoramic attempted to contact these Defendants at the listed telephone numbers, because businesses in China, Hong Kong, Japan and Pakistan that do not provide or confirm a working telephone number for their businesses cannot be served, as couriers in these countries will require a working phone number to ensure their service attempt can be completed. *Id.* ¶ 16. Similarly, it is very difficult to confirm the address for any business that does not provide or confirm its telephone number, since mailing services in these countries will be unable to confirm or verify the listed address without a telephone number. *Id.*

Based on Panoramic's investigation and extensive efforts to confirm the addresses of these defendants, none of the defendants utilizing the eBay, Shein and Temu platforms have listed locations that can be verified and thus used to serve defendants at their listed location. *Id.* ¶¶ 10–11, 17. In particular, many of these Defendants listed telephone numbers that appear to have no relation to their business and suggest that their registered information is false, while other Defendants refused to provide any information about their location or their business—suggesting that these businesses will seek to avoid service efforts. *Id.* ¶¶ 10–13. Such stores cannot be reliably contacted or served because there is not an identifiable employee to contact and they will often close or hide once their illegal behavior is identified. *Id.* ¶¶ 10–11, 17.

Because Defendants provide incomplete or inaccurate information about their location and contact information, their locations are not known, and Plaintiff will not be able to notify the Defendants of this action or serve them without using alternative methods of service. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue this action because no other contact information is available for the Defendants. Indeed, Defendants are likely to have listed incorrect names and physical address information precisely

for the purpose of concealing their locations and avoiding liability for their unlawful conduct. *See* Cruickshank Decl. ¶ 23.

A number of courts, including in this District, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Props.*, 284 F.3d at 1018; *see also Google LLC*, 2026 WL 353660, at *1–2; (permitting alternative service by electronic means as part of a preliminary injunction); *Cengage Learning*, 2018 WL 2244461, at *5 (finding email service appropriate on defendants who provided no true names or physical addresses and thus were not known)); *Kelly Toys*, 2022 WL 3701216, at *9–10 (affirming electronic service on online retailers who hid their location was proper under Rule 4(f)(3)).

As such, federal courts, including in this District, have permitted alternative service of process in matters involving counterfeiting and trademark infringement. *See WowWee Grp. Ltd. v. Haoqin*, No. 17-cv-9893, 2019 WL 1316106, at *2 (S.D.N.Y. Mar. 22, 2019) (upholding electronic service on online merchants who were "anonymous individuals or businesses . . . that traffic in counterfeit goods" and whose identities consist of "only a username and corresponding email address"); *Cengage Learning*, 2018 WL 2244461, at *5 (permitting service by e-mail on foreign defendants where defendants did not provide true legal names or physical addresses on their online storefronts).

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014–15. As the Ninth Circuit explained in *Rio Properties*, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not

be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* at 1015. As such, this Court may allow Plaintiff to serve the Defendants via electronic publication and/or e-mail.

2. <u>Defendants' Infringements of Plaintiff's Intellectual Property Create Exigent Circumstance for Service</u>

Further, the nature of Plaintiff's claims—that anonymous online merchants are actively infringing upon their intellectual property—present exigent circumstances that justify alternative service upon the infringing defendants. Article 15 of the Hague Convention expressly permits a judge to order "in case of urgency, any provisional or protective measures," Hague Convention, Art. 15. The 1993 Advisory Committee Notes to Rule 4 expressly acknowledge that the Hague Convention does authorize "special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstance" and that "[i]n such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement." Fed. R. Civ. P. 4. Accordingly, in similar cases involving counterfeiting by foreign merchants operating online stores, courts in this District have acknowledged the need for timely service and have permitted electronic service of certain documents and orders under Rule 4(f)(3). *See ABC v. DEF,* No. 24-cv-8341 (DLC), 2024 WL 5168624, at *2 (S.D.N.Y. Dec. 13, 2024) (acknowledging that ongoing counterfeit activity creates exigencies that justify e-mail service of temporary restraining order and related orders); *Intersell Ventures, LLC v. 1688 Factory Direct Store Store*, No. 25-cv-408, 2025 WL 485715, at *6 (S.D.N.Y. Feb. 11, 2025) (stating exigencies of online counterfeiting justified temporary restraining order permitted electronic service of order and related documents on all defendants);

*Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co.*, No. 25-cv-2732 (MMG), 2025 WL 1276618, at *3 (S.D.N.Y. Apr. 29, 2025) (granting temporary restraining order against online merchants defendants and permitting electronic service of order on those defendants).

The proposed Temporary Restraining Order provides for issuance of a single original summons[7] in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b).

In summary, Plaintiff respectfully submits that service of process by e-mail and by the creation of the Link is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections, if any. Plaintiff, therefore, requests permission to serve the Summons, Complaint, the Order to Show Cause (upon entry), and any supporting papers by e-mail and publication of the Link.

## V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00).

[7] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).

Plaintiff submits that a bond in such amount is fair and reasonable under the circumstances and is consistent with the bond amounts required by courts in similar case. *See, e.g., Kipling Apparel Corp.*, 2016 WL 8814345, at *3 ($5,000 bond); *Cengage Learning*, 2018 WL 2244461, at *6 ($2,500 bond); *Weili Fang*, 2021 WL 1249631, at *7 ($1,000 bond).

## VI. CONCLUSION

Plaintiff's business, its LUCKY EGG brand, and consumers are being irreparably harmed by online counterfeiters. Without entry of the requested relief, the sale of Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's intellectual property rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form proposed and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Dated: May 13, 2026

Respectfully,

*/s/ Christopher Tom*

Christopher Tom
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ctom@bsfllp.com

*Attorney for Plaintiff LUCKY EGG LIMITED*